1  GEORGE S. CARDONA
   Acting United States Attorney
2  ROBB C. ADKINS
   Assistant United States Attorney
3  Chief, Southern Division
   BRETT A. SAGEL (CBN: 243918)
4  Assistant United States Attorney
       Ronald Reagan Federal Building
5      411 West Fourth Street, Suite 8000
       Santa Ana, California 92701
6      Telephone: (714) 338-3598
       Facsimile: (714) 338-3523
7      Email: Brett.Sagel@usdoj.gov

8  Attorneys for Plaintiff
   UNITED STATES OF AMERICA
9
                  UNITED STATES DISTRICT COURT
10
            FOR THE CENTRAL DISTRICT OF CALIFORNIA
11
                      SOUTHERN DIVISION
12

13 UNITED STATES OF AMERICA,   ) No. SA CR 07-36-AG
                               )
14          Plaintiff,         ) GOVERNMENT'S RESPONSE TO PRE-
                               ) SENTENCE REPORT AND GOVERNMENT'S
15          v.                 ) POSITION RE: SENTENCING FOR
                               ) DEFENDANT GEORGE JARAMILLO
16 GEORGE JARAMILLO,           )
                               ) Date:      September 14, 2009
17          Defendant.         ) Time:      2:00 p.m.
                               )
18 ─────────────────────────── )

19      Plaintiff United States of America, by and through its

20 counsel of record, Assistant United States Attorney Brett A.

21 Sagel, hereby submits its Response to the Pre-Sentence Report and

22 the its Position Regarding Sentencing for defendant George

23 Jaramillo.  The Government's sentencing position and response is

24 based upon the attached memorandum of points and authorities, the

25 files and records in this case and in the related case of United

26 States v. Michael Caraona, SA CR 06-224(D)-AG, the Pre-Sentence

27 Report, and such additional evidence or argument as may be

28 presented at the sentencing hearing.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**INTRODUCTION**

On March 13, 2007, George Jaramillo ("defendant") pled guilty to a two-count Information in which he is solely named, to one count of filing a false tax return, in violation of 26 U.S.C. § 7206(1), and one count of honest services mail fraud, in violation of 18 U.S.C. §§ 1341 and 1346.  Defendant pled guilty pursuant to a cooperation plea agreement, however, defendant has cooperated with the federal investigation related to public corruption and related crimes since March 2004.

On October 25, 2007, in a related matter, a grand jury returned an indictment charging Michael Carona, the sitting-Sheriff of Orange County, with conduct that violated his sworn duties and responsibilities to the citizens of Orange County and the State of California and violated the public's trust in the highest ranking law enforcement official in Orange County.  After a jury trial, the jury found Carona guilty of witness tampering, involving Carona's attempt to convince Don Haidl ("Haidl") to lie to and withhold testimony from a federal grand jury, in violation of Title 18, United States Code, Section 1512(b)(2).

The Probation Office prepared and disclosed its Pre-Sentence Report ("PSR") and Sentencing Recommendations for defendant on August 7, 2009.  The Probation Office determined that defendant's total offense level is 17 and the criminal history category is II.  (PSR ¶ 114).  Thus, the Probation Office calculated the sentencing range to be 27-33 months imprisonment.  The Probation Office recommended defendant serve a sentence of 27 months, pay a

fine of $50,000, and be placed on supervised release for three years.

The Government has no material objections to the factual statements in the PSR, the Offense Level Calculation, or the calculation of criminal history category. The Government concurs with the Probation Office's offense level calculation resulting in a total offense level of 17. (PSR ¶¶ 32-65). The Government is simultaneously filing a motion for downward departure pursuant to 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1, seeking a six level departure from this Court for defendant's substantial assistance.

The Government, therefore, submits that the appropriate total offense level should be eleven, with a Zone C advisory guideline range of 10-16 months. As will be discussed below, the Government recommends a sentence of three years probation, to include 10 months home-confinement, a fine of $50,000, and a restitution order of $183,688.66,[1] which the Government believes is the minimum sentence necessary to provide appropriate general and specific deterrence, to promote respect for the law, to provide just punishment, and to reflect the seriousness of defendant's crimes.

**II.**

**FACTUAL BACKGROUND**

In early 1998, Carona, then the Marshal of Orange County running to become Sheriff of Orange County in the June 1998 election, along with his campaign manager George Jaramillo, met

---

[1]This is the judgment amount Jaramillo stands to receive in back pay and benefits from his civil lawsuit with the County of Orange.

Haidl, a wealthy Orange County businessman.  Carona and Jaramillo
promised Haidl that if Haidl got Carona elected Sheriff, Haidl
would have access to the resources of the Orange County Sheriff's
Department ("OCSD").  Soon thereafter, Carona, Jaramillo, and
Haidl devised a plan in which Carona knowingly received -- and
used -- illegally-reimbursed campaign contributions along with
other improper in-kind contributions made by Haidl in connection
with the June 1998 Sheriff's election.  As a result in part of
the illegal campaign contributions, Carona won the election for
Sheriff of Orange County in June 1998.

        Soon after winning the election, Carona announced that he
was going to make both Jaramillo and Haidl Assistant Sheriffs,
regardless of these two individuals' qualifications.  Carona also
lobbied the Orange County Board of Supervisors to have the
qualifications for Assistant Sheriff changed to enable him to
appoint Jaramillo and Haidl to the position.  On January 4, 1999,
Carona, Jaramillo, and Haidl were sworn in as Sheriff and
Assistant Sheriffs, respectively.

        Starting in approximately September 1998, after winning the
election, but prior to being sworn in, Carona and Jaramillo began
receiving monthly cash bribes of $1,000 from Haidl.  These cash
bribes continued through July 2002.  In addition to the cash
bribes, Carona and Jaramillo also received other gifts and items
of value from Haidl.  Both Carona and Jaramillo, however,
concealed their receipt of these improper gifts and payments,
along with other items of value, by failing to disclose them on
their Form 700 Statements of Economic Interests.

        By March 2004, Carona and Jaramillo had a falling out and

4

both were aware of the federal investigation in this case.  On March 17, 2004, Carona fired Jaramillo from the OCSD.  Almost immediately, Jaramillo met with federal investigators to provide evidence regarding Carona's corrupt activities.  Carona learned of Jaramillo's cooperation and attempted to influence the testimony of others in light of Jaramillo's cooperation.  As this Court heard at Carona's trial, from 2004 through 2006, defendant had numerous meetings and discussions with Haidl regarding what their stories would be and how to conceal their prior activities in light of Jaramillo's cooperation with the federal Government.

In early 2007, Haidl entered his guilty plea before this Court and began cooperating with the Government.  As part of Haidl's cooperation with the Government, Haidl surreptitiously recorded three conversations with Carona on July 7, July 15, and August 13, 2007.  The surreptitiously recorded meeting on August 13, 2007, formed the basis for Count Six, on which the jury convicted Carona.  This Court heard these recordings at length, which included Carona's admissions of earlier misconduct as well as his numerous attempts to get Haidl to lie and withhold the truth regarding their corrupt activities (of which Jaramillo knew), in response to Carona's belief that the federal Government's only source was Jaramillo.

//

5

1                              **III.**

2                    **SENTENCING RECOMMENDATION**

3  A.   THE GOVERNMENT'S GUIDELINE CALCULATION

4        Using the 2002 United States Sentencing Guidelines, the

5  Government submits that the following guideline calculation

6  applies in the sentencing of defendant Jaramillo:

7  Base Offense Level:      10   [USSG § 2C1.1(a)]

8  More than One Bribe:     +2   [USSG § 2C1.1(b)(1)]

9  Value Benefits/Payments: +8   [USSG § 2C1.1(b)(2)(A)]

10 Accept. of Resp.:        -3   [USSG § 3E1.1]

11 Substantial Assistance:  -6   [USSG § 5K1.1]

12 Total Offense Level:     11[2]

13 With a criminal history category of II, a total offense level of

14 eleven yields an advisory sentencing range of 10-16 months.

15 B.   THE GOVERNMENT'S RECOMMENDED SENTENCE

16       Defendant now stands before this Court as a convicted felon

17 who admitted from "on or about June 1, 1998, to on or about March

18 17, 2004," to engaging in a "scheme to defraud the citizens of

19 the County of Orange and the State of California of their right

20 to his honest services as a public official. Def. Plea Agreement

21 P.7.  Defendant engaged in this corrupt conduct independently and

22 in conjunction with Carona and others.  The Government submits

23 that this Court sentence defendant to a term of probation of

24 three years, to include: ten months home-confinement; a fine of

25

26       [2]The Probation Office correctly computes the guideline
   calculation for the tax offense and also properly notes that this
27 calculation does not group with the corruption offense.  The
   total offense level calculation, therefore, is completely based
28 on defendant's honest services fraud conviction.

                                6

$50,000; and a restitution judgment of $183,688.66.  The

Government respectfully submits that this sentence, in light of

defendant's acceptance of responsibility and early cooperation,

is the minimum sentence that is appropriate and reasonable in

light of the statutory policy goals set forth in 18 U.S.C. §

3553(a).

        1.   Home Confinement in Lieu of Imprisonment

        Defendant previously served a period of twelve months

incarceration pursuant to his state conviction in 2007.  PSR ¶

70.  Had this Court sentenced defendant simultaneously to his

state sentence, defendant likely could have received concurrent

time on his state sentence.  Moreover, the Government has dealt

with defendant Jaramillo since 2004, and has clearly seen a

transformation in defendant, especially in light of his period of

incarceration.  The Government does not believe any additional

period of incarceration is necessary to impose a "sufficient"

sentence, "not greater than necessary," to comply with the

enumerated purposes of Section 3553(a).

        In addition, defendant is currently gainfully employed, and

according to members of the executive board of his employer,

excelling in his employment.  PSR ¶ 93.  As will be discussed

below, the Government believes a substantial fine and restitution

order are appropriate, and therefore, a period of incarceration

would deprive defendant of the income to pay such requirements.

        Defendant, however, continues to live a reckless and

irresponsible lifestyle, as it relates to his spending habits.

The Government believe a period of home detention will "curb

[defendant's] spending and [cause him] to live a more modest but

1    comfortable lifestyle within his means." PSR ¶ 108.

2        2.  Fine

3        As this Court stated at the sentencing hearing of Carona:

4    [I]n formulating a sentence, I considered different
     alternatives.  I considered fines.  And frankly as I
5    look at the reasonableness of the sentences, I would
     prefer to be heavier on the fine than on the term of
6    imprisonment.  I sometimes think as I get
     recommendations on sentencing there is not enough focus
7    on fines, there is not enough focus on restitution.

8    Transcript Carona Sentencing, P.118.  The Government agrees that

9    in this case, a larger emphasis should be placed on the fine (and

10   restitution), rather than on term of imprisonment.

11       The Probation Office recommends a $50,000 fine, the high end

12   of the advisory guideline range for an offense level of seventeen

13   pursuant to USSG Section 5E1.2(c)(3).  The purpose of criminal

14   fines is punitive, not remedial.  Schachter v. C.I.R., 255 F.3d

15   1031, 1034-35 (9th Cir. 2001); USSG § 5E1.2(d) ("The amount of

16   the fine should always be sufficient to ensure that the fine,

17   taken together with other sanctions imposed, is punitive.").  In

18   the current case, defendant personally received at least $50,000

19   in improper benefits from Haidl alone in the form of cash bribes

20   and CFS checks, and defendant admits in his plea agreement other

21   items of value defendant and his family received.

22       According to the PSR, defendant is receiving approximately

23   $150,000 per year from his employment, which does not include the

24   additional income he will receive from his pension starting in

25   2010 from the City of Garden Grove and County of Orange. PSR ¶¶

26   98-109.  Defendant's financial disclosures in the PSR reveal a

27   defendant who has the ability to pay a fine, at least after he

28   ceases his excessive and reckless spending.  Accordingly, a

8

$50,000 fine would serve a punitive purpose, and the Government believes the fine should be at least $50,000, with defendant obligated to pay a portion immediately and the remainder over time, which shall bear interest as provided by law.[3]

      3.  <u>Restitution</u>

     The Probation Office correctly states "[t]he victims of [defendant's] Honest Services Fraud are the citizens of the County of Orange and the State of California." PSR ¶ 28. Defendant admitted as part of his factual basis of his plea agreement that he deprived the citizens of Orange County and the State of California of his honest services dating from June 1, 1998 -- before he was even sworn in as Assistant Sheriff -- until March 17, 2004 -- when Carona fired him from the OCSD. Def. Plea Agreement P.7. As this Court previously stated, and the Government agrees, that Carona's criminal actions and misdeeds victimized the Orange County community, our legal and criminal justice system, and the OCSD specifically. At the heart of Carona's violation of the trust bestowed upon him included having the Orange County Board of Supervisors change the qualifications for Assistant Sheriffs and making defendant Jaramillo, his co-schemer who objectively was not qualified, the Assistant Sheriff of Operations and Chief of Staff.

     Title 18, United States Code, Section 3663A, also known as

---

[3]Although the Government is recommending a three-year term of Probation, the Government would not oppose early termination of Probation when defendant has paid his entire fine and restitution. Furthermore, if this Court believes a longer term of Probation is necessary to ensure the payment of the fine and/or restitution, the Government would not oppose a longer term of Probation.

the Mandatory Victims Restitution Act ("MVRA"), requires this
Court to order a convicted defendant to "make restitution to any
victim of" the offense of conviction, and a government entity can
be a victim.   18 U.S.C. § 3663A(a)(1); <u>United States v. Martin</u>,
128 F.3d 1188, 1190-91 (7th Cir. 1997).   Where the offense of
conviction involved as an element a scheme, conspiracy, or
pattern of criminal activity, a "victim" for purpose of the MVRA
is any person directly harmed by the defendant's conduct in the
course of the scheme, conspiracy, or pattern.   18 U.S.C. §
3663A(c)(1)(B).   The proper amount of restitution is the amount
wrongfully taken by defendant.   18 U.S.C. § 3663A(b)(1)(B).

In <u>United States v. Crawley</u>, 533 F.3d 349 (5th Cir. 2008),
the Fifth Circuit upheld a restitution order on a union boss
convicted of honest services fraud that required the return of
his salary and pension, plus his kickbacks.   <u>Id.</u> at 358.   The
Court stated:

> [T]he MVRA requires the defendant to return any ill-
> gotten property which has been acquired by, *inter alia*,
> fraud on the victim.   The salary and pension received
> by Crawley after/in connection with his 2002 voter
> fraud certainly meets this requirement.   Crawley
> procured the salary and pension through his fraudulent
> acts, bringing his conduct within the [MVRA].
> Therefore, returning the salary and pension is
> required.

<u>Id.</u> at 359.   The Court concluded that a "contrary holding would
allow Crawley to benefit from his fraudulent conduct, a result
which runs afoul of the principles on which restitution is
based."   <u>Id.</u>; <u>see also</u> <u>United States v. Sapoznik</u>, 161 F.3d 1117,
1121-22 (7th Cir. 1998) (upholding restitution judgment under the
MVRA of one year's salary of a police chief convicted of honest
services fraud).

10

Defendant sued the County of Orange and Carona for firing Jaramillo without affording him the appropriate opportunity to appeal or dispute his termination. <u>Jaramillo v. County of Orange et al.</u>, 05 CC 04220 (Orange County Sup. Ct.). The Honorable Andrew P. Banks ruled the County of Orange was liable to Jaramillo based on the actions of former Sheriff Carona. Judge Banks ordered the County to pay Jaramillo, among other things, back pay and benefits from the date of his termination (March 17, 2004) through January 28, 2007 (date Carona resigned), minus the amount Jaramillo made during this same period. As a result, after the appropriate deductions, the County of Orange must pay Jaramillo $183,688.66.

Defendant Jaramillo's scheme to defraud the citizens of Orange County included getting Carona elected using illegal campaign contributions and Jaramillo and Carona running the OCSD to benefit and enrich themselves. Although an argument could be made that Jaramillo's entire salary and benefits he undeservedly received throughout his entire term at the OCSD should be returned as restitution, the Government submits that any back pay and benefits Jaramillo has received (or will receive) for the period of time he did not even work at the OCSD, should be ordered paid to the County of Orange as restitution for his actions pursuant to his scheme. Allowing Jaramillo to receive money for being terminated from a job he received through his fraudulent scheme and in which he deprived his employer of his honest services "would allow [Jaramillo] to benefit from his fraudulent conduct, a result which runs afoul of the principles on which restitution is based." <u>Crawley</u>, 533 F.3d at 359.

1

**IV.**

2

**CONCLUSION**

3    For all of the reasons stated above, the Government

4 respectfully requests that defendant be sentenced to a term of

5 probation of three years to include ten months of home

6 confinement, ordered to pay a fine of $50,000, restitution in the

7 amount of $183,688.66, and a special assessment of $200.    The

8 Government respectfully asserts this sentence is both reasonable

9 and appropriate in this case, and is sufficient, but not greater

10 than necessary, to achieve the goals of 18 U.S.C. § 3553(a).

11

12

13                              Respectfully submitted,

14                              GEORGE S. CARDONA
                                Acting United States Attorney
15
                                ROBB C. ADKINS
16                              Assistant United States Attorney
                                Chief, Southern Division
17

18                               _Brett A. Sagel_
19 Date: 09/04/09                BRETT A. SAGEL
                                Assistant United States Attorney
20                                  Attorneys for Plaintiff
                                    United States of America
21

22

23

24

25

26

27

28

                                12