```
GEORGE S. CARDONA
Acting United States Attorney
ROBB C. ADKINS
Assistant United States Attorney
Chief, Santa Ana Branch Office
BRETT A. SAGEL (CBN: 243918)
Assistant United States Attorney
     Ronald Reagan Federal Building
     411 West Fourth Street, Suite 8000
     Santa Ana, California 92701
     Telephone: (714) 338-3598
     Facsimile: (714) 338-3708
     Email:    Brett.Sagel@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA
```

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>      v.<br><br>GEORGE JARAMILLO,<br><br>      Defendant. | No. SA CR 07-36-AG<br><br>MOTION FOR DOWNWARD DEPARTURE UNDER 18 U.S.C. § 3553(e) AND USSG § 5K1.1<br><br>Sentencing Date: Sep. 14, 2009<br>Sentencing Time: 2:00 p.m. |

Plaintiff United States of America, by and through its counsel of record, hereby files this Motion for Downward Departure pursuant to 18 U.S.C. § 3553(e) and U.S.S.G. § 5k1.1.

Dated: September 4, 2009      Respectfully submitted,

                                        GEORGE S. CARDONA
                                        Acting United States Attorney

                                        ROBB C. ADKINS
                                        Assistant United States Attorney
                                        Chief, Santa Ana Branch Office

                                        _____/s/_____
                                        BRETT A. SAGEL
                                        Assistant United States Attorney
                                        Attorneys for Plaintiff
                                        United States of America

# I.

## INTRODUCTION

Plaintiff United States of America hereby moves for a downward departure for defendant GEORGE JARAMILLO ("defendant") pursuant to 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1. On March 13, 2007, defendant pled guilty to the two-count Information in which he is solely named. The United States Probation Office ("USPO") disclosed its Presentence Report ("PSR") to the parties on August 7, 2009. The PSR recommends that defendant receive a sentence of twenty-seven months imprisonment. The Government is simultaneously filing its response to the PSR in a separate pleading. The Government now moves for a six-level downward departure under U.S.S.G. § 5K1.1 for substantial assistance.

# II.

## MOTION FOR DOWNWARD DEPARTURE

Pursuant to U.S.S.G. § 5K1.1, upon motion of the Government, the court may reduce the sentence a defendant is facing. Under U.S.S.G. § 5K1.1, the court may reduce the defendant's sentence on the motion of the Government to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense. Section 5K1.1(a) sets forth five factors that the court may consider to determine the appropriate sentencing reduction where a defendant provides such assistance. The Government believes defendant has satisfied the criteria set forth in § 5K1.1(a) and, therefore, moves for a six-level downward departure.

A.  **Background**

    1.  **The Offense**

In approximately 1997, Michael Carona ("Carona") decided to run for Sheriff of Orange County in the June 1998 election. Early on, Carona had very little support, or supporters, when he met Jaramillo. Carona agreed to bring Jaramillo into the campaign as Carona's campaign chairman; they ran the Carona for Sheriff Headquarters out of Jaramillo's law offices (Jaramillo, Hoffman & Associates). Without any prior experience, Jaramillo's wife, Lisa Jaramillo, was hired as Carona's fund-raiser. Soon thereafter, Carona and Jaramillo recruited Don Haidl, a multi-millionaire businessman who was involved in the automobile auction industry. Carona, Jaramillo, and Haidl devised a plan for Haidl to raise hundreds of thousands of dollars for the Carona campaign for Sheriff in 1998 through illegally reimbursed campaign contributions, and for the campaign to spend the illegally-reimbursed campaign contributions as well as illegally-provided in-kind contributions to win the election.

Aided with the illegal campaign contributions, Carona was elected Sheriff of Orange County on June 2, 1998, and he assumed office on January 4, 1999. Carona appointed Jaramillo as "Chief of Staff" and Assistant Sheriff of Operations; Jaramillo was sworn in alongside Carona on January 4, 1999. Jaramillo held that position until March 17, 2004, when Carona fired Jaramillo.[1]

Carona, the elected sheriff of Orange County, Jaramillo, and

---

[1] Carona appointed Haidl as the Assistant Sheriff of Reserves and Haidl was also sworn into this position on January 4, 1999.

others engaged in a scheme to defraud the public of its right to their honest services through their secret acceptance of cash, gifts, and other things of value, the use of their position to benefit those who provided them, either directly or indirectly, with things of value, and the fraudulent concealment of the things of value from the public in violation of California law. Carona and Jaramillo also indirectly received items of value that were given to their family members or acquaintances, that were also fraudulently concealed from the public in violation of California law.

As corroborated later by other witnesses, Jaramillo provided early in the investigation (March 2004) the bribes and items of value that Carona received from Haidl, including: cash[2]; gifts; and other things of value directly to Carona, Carona's family, and on some occasions, to Debra Hoffman at Carona's request. Jaramillo also provided information regarding Haidl contributing at least $100,000 to Carona for campaign and campaign-related activities, including reimbursed campaign contributions.

Jaramillo also disclosed his, Carona's, and Haidl's scheme for Haidl to get Carona and Jaramillo additional money and exposure on their names. In approximately February 1999, one month after taking office, Carona and Jaramillo were placed on the Board of Directors for Charity Funding Services ("CFS"), a company owned by Haidl's uncle, which was initially capitalized

---

[2] From approximately October 1998 through July 2002, Don Haidl secretly made cash payments of approximately $1,000 per month to both Carona and Jaramillo, totaling approximately $48,000 to each.

with Haidl's money.  Prior to February 1999, CFS never had a board of directors, but in February 1999 its board of directors included Haidl, Haidl's brother, Haidl's uncle, Carona, and Jaramillo.  In addition, CFS began writing Jaramillo and Carona $1,000 checks each month for their "service" on the Board, even though they conducted no work nor attended any meetings.  No other board members received a fee or payment.  These CFS payments as well as the cash bribes form the primary facts underlying Jaramillo's plea agreement for both the tax and honest services convictions.

**2.    Defendant's Substantial Assistance**

George Jaramillo pled guilty on March 17, 2007, under seal, to one count of filing a false tax return, in violation of 26 U.S.C. § 7206(1), and one count of honest services mail fraud, in violation of 18 U.S.C. §§ 1341 and 1346.  Jaramillo pled guilty pursuant to a cooperation plea agreement, however, Jaramillo had already been cooperating with the federal investigation for several years prior to the entering of his guilty plea.

Within days of being fired from the Orange County Sheriff's Department ("OCSD"), Jaramillo met with federal agents and began debriefing and cooperating.  Between March 2004 and October 2008, Jaramillo met with federal agents and prosecutors on numerous occasions to provide substantial assistance against other potential targets and defendants, including Carona.  In addition to Jaramillo's considerable cooperation, Jaramillo's wife, his sister-in-law, and other acquaintances, all cooperated with the Government with the hope that their assistance could be considered as part of Jaramillo's substantial assistance.

Jaramillo worked directly with Carona, and others, from 1997 through 2004, and had intimate knowledge of criminal activity they engaged in together and independently. Carona and Jaramillo began having conflicts in late-2003 and early-2004, and as a result, Carona fired Jaramillo on March 17, 2004. At the time of Jaramillo's firing, the FBI had just begun an investigation into allegations of criminal conduct allegedly taking place at the OCSD, including conduct possibly by Carona, Jaramillo, and Haidl. Within weeks of Jaramillo's termination, Jaramillo met with federal agents for several hours to provide information regarding the investigation, including information regarding the cash bribes and other nefarious conduct by Carona. Jaramillo was the first substantial witness to cooperate in the federal investigation, and his cooperation led to the Government learning of and interviewing other individuals with pertinent information.

Jaramillo's cooperation with the federal Government was quite open, as Jaramillo himself was telling Haidl and others about his cooperation, and this information got back to Carona. The animosity Carona and Jaramillo had for each other after Jaramillo's termination and Jaramillo's open cooperation against Carona prevented undercover opportunities for Jaramillo. Jaramillo's open cooperation, however, provided considerable benefits to the Government's investigation in later undercover recordings. After Haidl began cooperating with federal authorities and surreptitiously recording Carona, Haidl was able to blame Jaramillo for the information the federal Government had on Carona, without Carona ever being suspicious that it was also coming from Haidl. The facts and circumstances underlying

Carona's count of conviction, obstruction of justice, primarily stemmed from Carona's attempt to persuade Haidl to lie to and withhold testimony from the federal grand jury in response to the evidence and cooperation Carona believed Jaramillo had already provided the grand jury.

Jaramillo met with agents and prosecutors at least ten times throughout the years to debrief and provide information. In addition, Jaramillo often called the agents to provide small details and was always available by phone to answer questions the agents and prosecutors had. Even though Jaramillo did not testify at Carona's trial, he was invaluable during trial preparation and during the trial providing the Government with inside information to ask witnesses and cross-examine defense witnesses. And, as stated above, several witnesses did testify at trial to provide indirect substantial assistance for Jaramillo (all of whom might have invoked and/or refused to cooperate).

**B.   Bases for a Downward Departure**

Pursuant to Section 5K1.1, the Government moves for a six-level downward departure based on defendant's substantial assistance to authorities. As described below, the Government's request for a downward departure is supported by the criteria set forth in U.S.S.G § 5K1.1(a):

**1.   Significance and Usefulness of Defendant's Assistance**

Due to the information provided by defendant, the Government corroborated facts, obtained credible leads against other criminally culpable individuals, and obtained guilty verdicts on several individuals, including a criminal conviction pursuant to a plea agreement from Haidl and a guilty verdict against Carona

7

after a jury trial.

### 2. **Truthfulness, Completeness, and Reliability of Defendant's Information**

Defendant's cooperation and the information he provided appeared to be truthful and consistent with documentary evidence and statements of other Government witnesses.

### 3. **Nature and Extent of Assistance**

Defendant made himself available for witness interviews, proffer sessions, trial preparation, and was always available by phone to answer quick questions. He provided information and documents that were helpful to the Government, many of which the Government used at trial against Carona.

### 4. **Risk of Danger Resulting from Assistance**

The Court heard directly from Carona's mouth how he enjoyed his undeserved power and boasted as Sheriff he's the "most lethal mother fucker in politics in Orange County" and "the most dangerous elected official in Orange County." This Court also heard Carona make threats that he could get anyone prosecuted who turned against him, and subsequently took credit for the prosecutions of both Jaramillo and Joseph Cavallo by the Orange County District Attorney's Office. Carona assisted the state prosecutor's in their investigation and prosecution of Jaramillo, but withheld Carona's participation and knowledge of these same activities. Moreover, Jaramillo's willingness to provide information on and against several individuals, including against the highest ranking law enforcement official in Orange County, could easily have subjected him to harm (and possibly did). Despite this risk, defendant cooperated with the Government.

### 5. Timeliness of Assistance

Defendant immediately cooperated with the Government after the FBI contacted him. He agreed to a proffer sessions, had several debriefings with the FBI and IRS-CID, and subsequently signed a cooperation plea agreement. Furthermore, defendant tolled the statute of limitations on his tax offense, waived indictment, and pled guilty to an information. Defendant's assistance was timely enough for the Government to use his information to prosecute and convict several other individuals.

## III.

## CONCLUSION AND RECOMMENDATION

The Government believes that defendant has provided substantial assistance in the investigation and prosecution of several individuals. Therefore, the Government moves for a downward departure and recommends that the Court depart downward by six-levels.

If the Court accepts the recommendation of the Government, the downward departure would lower the total offense level the USPO recommends from seventeen to eleven. The bases and rationale for the Government's sentencing recommendation is enclosed in its separate simultaneous pleading, but in sum, the Government would recommend the Court sentence defendant to a term of probation for three years, which includes a term of home confinement for ten months and pay a fine of $50,000 and restitution to the County of Orange in the amount of $183,688.66.