1  David D. Lawrence, Esq. [State Bar No. 123039]
   E-Mail: dlawrence@lbaclaw.com
2  Christina M. Sprenger, Esq. [State Bar No. 205105]
   E-Mail: csprenger@lbaclaw.com
3  Anh N. Nguyen, Esq. [State Bar No. 253475]
   E-Mail: anguyen@lbaclaw.com
4  LAWRENCE BEACH ALLEN & CHOI, PC
   A Professional Corporation
5  1600 North Broadway, Suite 1010
   Santa Ana, California 92706
6  Telephone No.(714) 479-0180
   Facsimile No. (714) 479-0181
7
   Attorneys Specially Appearing for COUNTY OF ORANGE
8

9

10                    **UNITED STATES DISTRICT COURT**

11                    **CENTRAL DISTRICT OF CALIFORNIA**

12
   UNITED STATES OF AMERICA              )   Case No.: SACR 07-0036-AG
13                                        )
              Plaintiff,                  )
14                                        )   **COUNTY OF ORANGE'S AMICUS**
         v.                               )   **BRIEF IN RE COURT'S**
15                                        )   **RESTITUTION ORDER AND FEES**
                                          )   **REQUESTED BY HIS COUNSEL;**
16   GEORGE H. JARAMILLO,                 )   **MEMOREANDUM OF POINTS AND**
                                          )   **AUTHORITIES; DECLARATION OF**
17            Defendant.                  )   **DAVID D. LAWRENCE AND**
                                          )   **EXHIBITS**
18                                        )
                                          )   Date:  November 16, 2009
19                                        )   Time:  2:00 p.m.
                                          )   Crtrm: 10D
20                                        )
                                          )   **FOR DETERMINATION BEFORE**
21                                        )   **THE HONORABLE ANDREW J.**
                                          )   **GUILFORD**
22   _____)

23

24

25

26

27

28

                                    1

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.    INTRODUCTION.**

Notwithstanding his criminal convictions for corruption engaged in as Orange County Assistant Sheriff, Defendant George H. Jaramillo (herein  Jaramillo) brought suit against the County of Orange (hereinafter "County") alleging that he was wrongfully terminated, claiming violation of the Public Safety Officers Procedural Bill of Rights (hereinafter "POBOR") and a variety of other statutes.  The trial took place while Jaramillo was under a plea agreement with the Office of the United States Attorney to cooperate in the criminal prosecution of former Orange County Sheriff Michael Carona.  Carona had terminated Jaramillo's employment and Jaramillo was free to make allegations against Carona without fear of rebuttal knowing that the only person who could testify about the reasons for termination was Carona  who would invoke his Fifth Amendment right to remain silent if  called as a witness in the wrongful termination case while Carona's criminal prosecution was pending.  With that as the backdrop, Jaramillo was awarded back pay and pension benefits, a nominal award for the POBOR violations ($100) and injunctive relief.

As part of his criminal sentence, this Court has ordered Jaramillo to return or not accept any cash payments relating to the state court proceedings.  Jaramillo's civil counsel have raised the issue of their alleged right to attorneys fees relating to the civil case.

In response to the Court's invitation, the County of Orange [hereinafter "County"] submits this brief in support of the Court's restitution order.

**II.    SUMMARY OF COUNTY'S POSITION.**

At Jaramillo's sentencing hearing on September 14, 2009, this Court made its position on restitution clear:

> "Now I believe I'm required to state the various
>
> terms of the restitution, but I think I've stated them
>
> sufficiently by stating that when the County is to make a

1    payment it is not to be received, or if it's received it's to
2    be immediately returned."
3  United States of America vs. George H. Jaramillo, Reporter's Daily Transcript of
4  Proceedings Santa Ana, September 14, 2009, page 118. [Exh. 1]
5        At that time, counsel for Mr. Jaramillo, Mr. Baruch advised the Court that
6  State Court Judge Banks would be hearing the civil motion for award of attorneys
7  fees on October 23, 2009. **Id.** At 113. Specifically, Mr. Baruch stated:
8        MR. BARUCH: The motion for attorneys' fees is not
9        set to be heard before Judge Banks until October 23rd. I
10       don't know if that figures into your calculations as to what
11       you may want to do.
12       THE COURT: All right.
13       MR. BARUCH: And he has not signed the judgment
14       yet, although threatening to do so every day.
15  Id.
16       In response, this Court invited briefing with regard to restitution to be made to
17  the County and fees claimed by Jaramillo's civil attorneys and set a hearing for
18  November 16, 2009. In that regard, the Court stated:
19       THE COURT: All right. Give notice to
20       Mr. Lawrence. And you are now put on notice and the defense
21       counsel and the government are put on notice.
22       And to the extent we're talking about factual
23       matters **I would like evidentiary matters to be submitted like**
24       **the -- the fee agreement. You know, I don't know what your**
25       **words are. It might be how you worded it.**
26       **Recovered? Received? Paid by?**
27       It will be interesting. We'll see what the fee
28       agreement says, and I'll make an appropriate ruling at that

1   time.

2   Id.at 115 (emphasis added).

3   In the mean time, state court Judge Banks continued the hearing on Jaramillo's

4   request for attorneys fees to February 19, 2010.  Furthermore, notwithstanding this

5   Court's request for Jaramillo's fee agreements and a separate request by the County's

6   counsel, David Lawrence for same [see, Exh. 2], none have been produced.  Mr.

7   Lawrence is informed and believes that Mr. Baruch recently advised attorney Sagel

8   that any such agreements were privileged and would not be produced.

9   Consequently, the County's position is that the November 16th hearing should

10  address restitution and restitution only.  Any right that Jaramillo's civil attorneys

11  have to fees are simply agreements which must be worked out between Jaramillo and

12  his counsel. Consequently, this brief focuses upon restitution.

13  The attached State Court  Amended Judgment sets forth what amounts were

14  awarded and how they were calculated. [Exh. 3]  In essence Jaramillo was awarded

15  back pay from the date of his termination (March 17, 2004) to the date of his first

16  felony conviction at which time he was no longer eligible to be a peace officer, i.e.

17  January 29, 2007. That amounted to $183,688.66 which represented back pay and

18  benefits after deductions and offsets for moneys earned independently by Jaramillo

19  during that period of time.  He was also awarded $179,018.84 which represented the

20  retirement benefits which would have accrued during the applicable period.

21  Plaintiff also was awarded $100 for two alleged POBOR violations, i.e, not

22  providing him with notice of termination and a hearing re same.

23  The County submits that this Court's reasoning as to returning the back pay

24  applies equally to Jaramillo's pension benefits.  The benefits relate to the same time

25  period as the back pay and would not have accrued but for the back pay.

26  / / /

27  / / /

28  / / /

4

III.  **THE ENTIRETY OF THE STATE COURT MONETARY JUDGMENT SHOULD BE ORDERED PAID TO THE COUNTY AS RESTITUTION.**

Title 18, United States Code, Section 3663A, also known as the Mandatory Victims Restitution Act ("MVRA"), requires this Court to order a convicted defendant to "make restitution to any victim of" the offense of conviction, and a government entity can be a victim. 18 U.S.C. § 3663A(a)(1); United States v. Martin, 128 F.3d 1188, 1190-91 (7th Cir. 1997). Where the offense of conviction involved as an element a scheme, conspiracy, or pattern of criminal activity, a "victim" for purpose of the MVRA is any person directly harmed by the defendant's conduct in the course of the scheme, conspiracy, or pattern. 18 U.S.C. § 3663A(c)(1)(B). The proper amount of restitution is the amount wrongfully taken by defendant. 18 U.S.C. § 3663A(b)(1)(B); see also United States v. Crawley, 533 F.3d 349, 358 (5th Cir. 2008) (upholding a restitution order on a union boss convicted of honest services fraud that required the return of his salary and pension, plus his kickbacks); United States v. Sapoznik, 161 F.3d 1117, 1121-22 (7th Cir. 1998) (upholding restitution judgment under the MVRA of one year's salary of a police chief convicted of honest services fraud). Defendant's scheme to defraud the citizens of Orange County included getting Carona elected using illegal campaign contributions and Jaramillo and Carona running the OCSD to benefit and enrich themselves.  18 U.S.C. § 3663A(b)(1)(A).  "For sentencing purposes, the loss amount does not need to be precise and may only be a reasonable estimate of the loss based on the available information." U.S. v. Woodard, 459 F.3d 1078, 1087 (11th Cir.2006).

IV.  **ANY ISSUES REGARDING ATTORNEYS FEES ARE BETWEEN THE PLAINTIFF AND HIS COUNSEL.**

In general, the plaintiff and his counsel are free to enter into any agreement they choose regarding payment for legal services.  But that agreement is between

1  them and not to be determined by the Court except in extraordinary cases such as

2  when counsel charges an unconscionable amount.

3       In deed, while attorneys who represent clients in Section 1983 cases generally

4  assume that any award of fees under 42 U.S.C Section 1988 belong to the attorney,

5  the Supreme Court has made it clear that the award is to the plaintiff.

6  "[42 U.S.C.] § 1988 controls what the losing defendant must pay, not what the

7  prevailing plaintiff must pay his lawyer." Venegas v. Mitchell, 495 U.S. 82, 87-88

8  (1990). "[I]t is the party, rather than the lawyer, who is [] eligible [for the attorney's

9  fees]." Id.  In other words, the entitlement of the attorney's fees under Section 1988

10 belongs to the plaintiff and not his counsel, and the Court has no obligation to

11 determine what is due to the plaintiff's counsel pursuant to the fee agreement. Id. at

12 89 (citing, Evans v. Jeff D., 475 U.S. 717, 731-732 (1986).)

13      In essence, whether and to what extent Jaramillo's counsel recovers fees

14 depends upon future rulings by Judge Banks and the provisions of any fees

15 agreements between Jaramillo and his multiple attorneys.

16      For purposes of this hearing,  however, this Court is free to order that the state

17 court monetary awards be paid to the County, i.e., as stated by this Court at the last

18 hearing, Jaramillo is to either refuse payment or return it to the County upon receipt.

19 That does not negate any right Jaramillo's Counsel might have to payment for fees

20 from Jaramillo, it simply means that the monetary judgment in Jaramillo's favor is

21 not to be used for that purpose.

22 / / /

23 / / /

24 / / /

25 / / /

26 / / /

27 / / /

28 / / /

6

1  **IV.   CONCLUSION.**

2      Public policy and fairness dictate that this Court order Defendant Jaramillo to

3  make POBOR damages and restitution to the County by not accepting any salary

4  and retirement benefits resulting from the civil matter.

5                                 Respectfully submitted,

6  DATED: November *10*, 2009        LAWRENCE BEACH ALLEN & CHOI, PC

7

8                                 By _____

9                                    DAVID D. LAWRENCE

10                                   CHRISTINA M. SPRENGER

11                                   ANH N. NGUYEN
                                     Attorneys Specially Appearing for
12                                   COUNTY OF ORANGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF DAVID D. LAWRENCE

I, David D. Lawrence, state and declare as follows:

1.      I am an attorney at law, duly authorized to practice before this Court and I am a member of the firm of Lawrence, Beach, Allen & Choi, attorneys for Defendant County of Orange in the state civil matter entitled <u>Jaramillo v. County of Orange</u>, Case Number 05CC04220, the Honorable Andrew P. Banks presiding.  If call upon to do so, I could and would competently testify to the facts set forth herein except those matters stated upon information and belief and to as those matters, I believe them to be true.

2.      Attached hereto as Exhibit "1" is a true and correct copy of the cover page and pages 106 through 129 of the Reporter's Daily Transcript of Proceedings, Santa Ana, California dated Monday, September 14, 2009, which was the sentencing hearing for George Jaramillo in the matter of <u>United States of America v. George H. Jaramillo</u>, Case No. 8:07-cr-00036-AG-1.

3.      Attached hereto as Exhibit "2" is a true and correct copy of a letter that I sent to civil counsel for George Jaramillo, Joel Baruch via facsimile and U.S. mail on November 2, 2009 requesting that he provide me with signed copies of retainer agreements entered into by George Jaramillo relating to his civil suit against the County of Orange.  As of the preparation of this declaration, I have not received a response to my November 2nd letter.  Furthermore, on November 9, 2009, I was advised by Assistant United States Attorney Brett A. Sagel that he had recently spoken with Mr. Baruch who had advised him that he was not going to produce any retainer agreements regarding the civil matter based upon his belief that those documents were privilege.

4.      Attached hereto as Exhibit "3" is a true and correct copy of the Amended Judgment in the state civil matter Case Number 05CC04220 which was signed by Judge Banks on September 10, 2009.  For some reason, unknown to me,

1   Mr. Baruch advised this Court on September 14, 2009, that Judge Banks had not
2   signed the Proposed Judgment.
3           "MR. BARUCH:  and he [Judge Banks] has not signed the Judgment
4           yet, although threatening to do so every day."  (Exh. 1 at page 113)
5           Indeed, I am informed and believe that at a recent hearing before Judge
6   Banks, Judge Banks admonished Mr. Baruch for not serving Notice of Entry of
7   Judgment in the civil matter.  To date, I have yet to receive any Notice of Entry of
8   Judgment in the civil matter.
9           I declare under penalty of perjury under the laws of the State of California
10  and the United States of America that the foregoing is true and correct.
11          Executed on November _10_, 2009, at Santa Ana, California.

14                      _____
                                    Declarant

**EXHIBIT 1**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

---

HONORABLE ANDREW J. GUILFORD, JUDGE PRESIDING; COURTROOM 10D

---

United States of America,  )
                           )
                           )
                           )
            Plaintiff(s),  )
                           )
                           )
                           )
         vs.               )  No. 8:07-cr-00036-AG-1
                           )
                           )
                           )
George H Jaramillo,        )
                           )
                           )
                           )
            Defendant(s).  )
                           )
                           )
_____)


REPORTER'S DAILY TRANSCRIPT OF PROCEEDINGS
SANTA ANA, CALIFORNIA
MONDAY, SEPTEMBER 14, 2009




DENISE PADDOCK, CSR 10199, RPR, RMR, CRR
U.S. DISTRICT COURT REPORTER
(760) 533-9866
DENISE.PADDOCK@OCRECORD.COM

I've read all the papers cited by your counsel, by the US Attorney.  I think restitution is appropriate in this case.

I've cited, gone back and forth about case law concerning who the victim is.  I'm going to stand by who Mr. Jaramillo said the victim was or at least who he said who was the source of the scheme to defraud and who was defrauded, the citizens of the County of Orange, and I find the citizens of the County of Orange to be a victim.

I understand the arguments about what Judge Banks may have made and the findings he may have made about bad faith or whatever.  This is a federal court, and I am applying federal law, and I am applying the federal law concerning victims, and I am applying the rules applicable to victims.

As Mr. Sagel stated, I believe one might be able to justify an award of all the salary you have earned, but I also think that sentences need to be practical.  I think defendants need to be able to look at a sentence and determine that they can comply with the sentence and then move on to a lawful life.

I see that Mr. Sagel stated at Page 11 of his papers, although an argument could be made that Jaramillo's entire salary and benefits he undeservedly received throughout his entire term at the OCSD should be returned as

restitution, the government submits that any back pay and

benefits Jaramillo has received or will receive for the

period of time he did not even work at the OCSD should be

ordered to be paid to the County of Orange as restitution for

his actions pursuant to his scheme.

That will be the basis of my order, and the

restitutionary amount will be the amount of back pay and

benefits for the time period Mr. Jaramillo did not even work

at the OCSD.

Now, there has been various amounts suggested for

that.  One is $183,688.66.

I've determined that I don't need to calculate the

amount.  I'm only going to order that when the County of

Orange is ready to write you a check under any judgment from

the state court that you return that check or not accept the

check.  Whether that's a payment and a repayment, I don't

know.  I'm not going to enter a specific amount because I

don't know what ultimately is going to happen.  I'm simply

going to say that any payments made as a result of the

litigation we have described by you against the County of

Orange for the period of time -- involving the period of time

that you did not even work at the Orange County Sheriff's

Department, will either be accepted by you and returned or

not accepted.

MR. SAGEL:  Your Honor, a quick

clarification because --

THE COURT:  I know you're going to mention the attorneys' fees issue, and I've tried to figure out how I might express the statement to avoid further litigation over that issue.

I mean, part of me suggests I should wash my hands and let everybody work that out.  I'm actually thinking that it depends, in part, on what the fee agreement says between Mr. Jaramillo and the attorney.

MR. BARUCH:  It's a contingency fee agreement, the normal 40 percent trial.

THE COURT:  All right.  Did you catch that, Ms. Paddock?

MR. BARUCH:  There was a part of the agreement also that -- if I may --

THE COURT:  Well, let me say --

Let me say my -- the problem I have, Mr. Sagel, is I -- what if this was covered in the contingency fee agreement?  There may be a provision in that -- in the contingency fee agreement that cover, you know, payment in return.  I suspect not, but there may be.

Counsel?

MR. BARUCH:  I'm not sure what you're asking.  I can tell the court what the judgment was and how it was calculated by Judge Banks.  He asked the County to calculate

what it owed -- what would it owe Mr. Jaramillo from the

period of time of his termination on March 17th, 2004, until

a state court conviction on January 28th, 2007.

          Take into consideration his base salary --

          THE COURT:  Repeat that -- actually, hold on one

second.  Just a moment.

          All right.  Go ahead.

          MR. BARUCH:  Take into consideration his base

salary and the value of his benefits, which the County does

have a method of calculating.  He asked the County to

determine what that amount was.

          There was also a component of damages based on his

retirement in CALPERS.  The judge asked the County to

calculate for that period of time of March 17th, 2004, until

his state conviction, January 28th, 2007, how much they would

have to put in his retirement to make him get retirement on

the other end as if he had worked that period of time when

he's eligible to receive that retirement at age 50.

          And then they took his income that he had earned

during that period of time, which an expert had calculated at

$234,000, and subtracted that amount from those variables

that were calculated by Orange County.  So they did calculate

mitigation and damages during that period.

          The resulting number was approximately $363,000,

and the way it was calculated was 179,000 would be paid

directly into retirement and that remaining number, which was around 183,000, was actually damages that would be paid out.

My agreement with Mr. Jaramillo was a standard contingency fee agreement that, you know, attorneys normally do.

There's also an issue of attorneys' fees. We have a motion set for that on October 23rd because the causes of action, at least two of the three of them, attorneys' fees can be awarded.

THE COURT: All right. My --

Yes, Mr. Sagel.

MR. SAGEL: And let me just be clear, all the other payments from the Orange County that -- Mr. Baruch --

MR. BARUCH: Yes.

MR. SAGEL: -- that Mr. Baruch mentioned, we didn't ask for restitution. We didn't ask for any of the money to be paid on any of the damages, on retirement, any of the increased pension amounts, et cetera; only the amounts of his back pay subtracted by what he earned on his own be included, and that's the $183,000 figure.

MR. BARUCH: The only thing I would say, though, Your Honor, is when we presented the damages we presented as a $2 million figure over the course of a lifetime of 37 years of retirement. The judge fashioned the remedy that the County just put in the money of 179,000. My position is

that's part -- I can calculate that money in my contingency
fee.  So if you were to take 40 percent of 363,000, it comes
up to about $148-, $150,000, at least as far as the agreement
goes.

        And that's why I'm here, Your Honor.  I understand
the court thinks that -- and I'm sure the government did
that, all right.  He's going to get a check and it's going to
go to him, and maybe he paid his attorney hourly so his
attorney doesn't have to worry about that, but, I mean, those
are the facts of litigation.  The court well knows that.

        THE COURT:  All right.  There are too many
variables without sufficient facts before the court.

        I've obviously stated I do not believe
Mr. Jaramillo should be receiving any cash payments as a
result of that litigation.

        I'm going to have to order a further hearing on
this where I can get ahold of the attorney fees issue and
make a ruling on the attorney fees issue.

        I do note, sir, that you did your job and obtained
a recovery, and those are all issues we're going to have to
determine at a future hearing.

        Is it appropriate at this time to set a time for
that hearing with briefings and such?

        MR. SAGEL:  I'm okay with that.  I just don't know
if Your Honor would -- the gentleman that I've been dealing

with is, I believe, Dave Lawrence, who was one of the

attorneys representing --

        THE COURT:  Did he write the letter?  There was a

letter of support.

        MR. SAGEL:  I don't think he'd be writing a letter

in support of Mr. Jaramillo.

        THE COURT:  All right.

        MR. BARUCH:  No.  He's a private counsel who was

hired by the County of Orange.

        MR. SAGEL:  Exactly.  He was -- he --

        THE COURT:  Let me ask you this, Mr. Sagel.

        If I set a hearing date, would you take the

responsibility of notifying the parties that there will be a

hearing, including Mr. Baruch?

        MR. BARUCH:  Yeah.  Joel Baruch.

        I'll take the -- you know, I'm a member of the

court.  I'm an officer of the court; so if you want to ask

me --

        THE COURT:  All right.  Between the two of you I

want you to give notice of this.

        And we'll set a date on what date, Ms. Bredahl?

        THE CLERK:  How long will we need?

        THE COURT:  A month.

        THE CLERK:  I mean for the hearing.

        THE COURT:  A month.

THE CLERK:  The time estimate of the hearing is a month?

MR. SAGEL:  The actual hearing.

MR. BARUCH:  May I suggest something, Your Honor, if I may?

THE COURT:  Yes.

MR. BARUCH:  The motion for attorneys' fees is not set to be heard before Judge Banks until October 23rd.  I don't know if that figures into your calculations as to what you may want to do.

THE COURT:  All right.

MR. BARUCH:  And he has not signed the judgment yet, although threatening to do so every day.

THE COURT:  Mr. Sagel.

MR. SAGEL:  I don't really want to make this public, but I won't -- as I think Your Honor knows I won't be in this country for the month of October; so really -- I don't really care when it's set, but if briefing is done, I'd ask it to either be before October or after October.

THE COURT:  All right.  The sentence obviously is going to have a period of custody.

Is there any objection to proceeding ahead with the custody with this matter of restitution to be heard at a hearing set in November?

MR. BARUCH:  You're asking me, Your Honor, or --

THE COURT:  Well, I'm asking actually the probation

office, the defense counsel, and Mr. Sagel.

MR. SAGEL:  That's fine with the government,

Your Honor.

THE COURT:  All right.  Hearing nothing further,

we're going to set a hearing for the determination of the

final amount of restitution.  As I've noted, the restitution

is only going to be payable at or about the time it's paid.

And so let's set a hearing in November, mid November.

THE CLERK:  November 16th at 2:00 p.m.

THE COURT:  All right.  November 16th at 2:00 p.m.

we will have a hearing on the amount of restitution.

All interested parties may file briefs by

November -- Mr. Sagel, what day?

MR. SAGEL:  November -- anytime November 1 or after

is fine with me.

THE COURT:  All briefs shall be filed and there

will just be one round of briefs with any supporting

documents one week before that hearing.

What date is that, Ms. Bredahl?

THE CLERK:  November 9th.

THE COURT:  All briefs will be filed by

November 9th.

MR. BARUCH:  Would you like me to give notice to

Mr. Lawrence, Your Honor?  I would be glad to.

THE COURT:  All right.  Give notice to
Mr. Lawrence.  And you are now put on notice and the defense
counsel and the government are put on notice.

And to the extent we're talking about factual
matters I would like evidentiary matters to be submitted like
the -- the fee agreement.  You know, I don't know what your
words are.  It might be how you worded it.

Recovered?  Received?  Paid by?

It will be interesting.  We'll see what the fee
agreement says, and I'll make an appropriate ruling at that
time.

All right.  Getting back to my statement of reasons
for the sentence, I've also considered community service.  I
always like to consider community service.  I think community
service is underutilized in our sentencing, but I've decided
custody is necessary in this case, particularly to promote
respect for the law, to provide deterrence, and to meet the
other 3553A factors.

Of course that does not mean that community service
would not be something I certainly would encourage
Mr. Jaramillo to do during the period of supervised release
or even while he is in prison.

I suspect actually through his church that
Mr. Jaramillo already is engaged in various forms of
community service.

All right.  Those are my 3553A factors.  Now I'm going to read the sentence itself.

After I read it I will ask if there are reasons that need to be stated as to why this sentence, as I state it, may not lawfully be imposed.

I am going to use, as I always use, the probation office letter as a basis, modified to reflect what I have just held and found and ruled.

Having considered both the sentencing factors of 18 USC Section 3553A and the advisory guideline range of 27 to 33 months, based upon an offense level of 17 and a criminal history category of two, the court is prepared to enter the following sentence:

It is ordered that the defendant shall pay to the United States a special assessment of $200, which is due immediately.

It is ordered that the defendant shall pay to the United States a total fine of $50,000 consisting of the following:

Count 1, a fine of $10,000.

Count 2, a fine of $40,000.

The totals shall bear interest as provided by law.

A sum of $5,000 shall be paid immediately on the fine.

Payment of that balance shall be due during --

payment of the balance shall be due during the period of imprisonment at the rate of not less than $25 per quarter and pursuant to the Bureau of Prisons Inmate Financial Responsibility Program.

If any amount of the fine remains unpaid after release from custody, monthly installments of $500 shall be made during the period of supervised release, with annual lump-sum payments of $15,000 due at the completion of the first and second years of supervision until defendant receives the civil settlement -- actually, the defendant will not be receiving the civil settlement pursuant to what I have previously stated here.

The monthly payments shall begin 30 days after the commencement of supervision.  The defendant shall comply with General Order No. 01-05.

Under the Sentencing Reform Act of 1984 it is the judgment of the court that the Defendant George H. Jaramillo is hereby committed on Counts 1 and 2 of the Information to the custody of the Bureau of Prisons for a term of 27 months.

This term consists of 27 months on each of Counts 1 and 2 of the Information to be served concurrently.

I will note that during almost all of the discussion here today the focus has been on Count 2.

Of course the defendant has also pled guilty to Count 1.

On the issue of restitution, I have previously stated my views, but the order of restitution will be that the defendant not take anything by way of cash payments from the County.  The exact parameters of how that restitutionary order will implemented will be determined after the hearing, which I expect to come after further rulings from the Superior Court.

Now I believe I'm required to state the various terms of the restitution, but I think I've stated them sufficiently by stating that when the County is to make a payment it is not to be received, or if it's received it's to be immediately returned.

Upon release from imprisonment the defendant shall be placed on supervised release for a term of three years. This term consists of one year on Count 1 and three years on Count 2 of the Information, all such terms to run concurrently under the following terms and conditions:

The defendant shall comply with the rules --

One, the defendant shall comply with the rules and regulations of the US Probation Office and General Order 318.

Two, the defendant shall cooperate in the collection of a DNA sample from the defendant.

Three, during the period of community supervision the defendant shall pay the special assessment and fine in accordance with this judgment's orders pertaining

to such payment.

Four, the defendant shall apply monies in excess of $500 received from income tax refunds to the outstanding court-ordered financial obligation.

In addition, the defendant shall apply all monies received from Lottery winnings, inheritance, civil judgments, and any unexpected financial gains to the outstanding court-ordered financial obligation.

And, five, the defendant shall truthfully and timely file and pay taxes owed for the years of conviction, as well as subsequent years for which he owes back taxes, and shall truthfully and timely file and pay taxes during the period of community supervision.

Further, the defendant shall show proof to the probation officer of compliance with this order.

All right.  Other than the reasons already argued, does either counsel know of any reason why the sentence as I have stated it may not be imposed as stated?

MR. SAGEL:  No, Your Honor.

MR. ROMNEY:  Did the court make a determination yet as far as credit or confinement -- home confinement?

THE COURT:  Yes.  I've made a determination that there will not be credit and there will not be home confinement.

MR. ROMNEY:  No further objection.

THE COURT:  All right.  The probation office, any comments?

Sorry to put you on the spot.

THE PROBATION OFFICER:  Does the court wish to waive the mandatory drug testing condition?

THE COURT:  Well, it -- I did not state it; right?

THE PROBATION OFFICER:  Right.

THE COURT:  All right.  And the mandatory drug testing condition is waived because the court determines that the defendant poses a low -- a very low risk of future substance abuse.

Anything further?

THE PROBATION OFFICER:  (Shook head.)

THE COURT:  All right.  The sentence, as I have stated it, will be the sentence imposed.

I find that the sentence is sufficient but not greater than necessary to comply with the purposes set forth in Section 2 of 3553A.

Now, Mr. Jaramillo, you have, I think, remaining rights to appeal under the plea agreement.

If you cannot pay the expenses of an appeal, you may apply for leave to appeal without expense to you if you meet the requirements for that.

Notice of the appeal must be filed with the court within ten days from the entry of this judgment.

Do you understand your right to appeal?

THE DEFENDANT:  Yes, sir.

THE COURT:  All right.  We now get to the issue of the custody of the defendant at this point.

What is the government's position?

MR. SAGEL:  For reasons stated at the beginning of this hearing and not -- and for no other reasons other than to benefit the Bureau of Prisons and to benefit the other members of Mr. Jaramillo's family, I would ask that the defendant have 45 days to self surrender to either the designated facility or to the marshals department in this building.

THE COURT:  Mr. Romney.

MR. ROMNEY:  Your Honor, we would respectfully request that Mr. Jaramillo be allowed to surrender sometime after the 1st of January, if that's possible.

THE COURT:  Reason?

MR. ROMNEY:  So that he can get his affairs in order for his family, for himself, for his son who is in college, and basically make a determination as to what they'll do with their home.

And I think that will take longer than 45 days.

THE COURT:  Mr. Sagel, do you have any information as to how long the Bureau of Prisons might need?

MR. SAGEL:  I can tell you from the experience with

the previous defendant that I was told within about 15 days
of which facility he was designated to; so although they
asked for a lengthier set of time last time, I had the answer
quite quickly; so I think they normally ask for at least
30 days.

THE COURT:  I'm going to set the report date at
45 days.

Now, let me ask both parties, is it agreed that the
circumstances of the defendant's prior release and appearance
justifies continued release on the previous terms and
conditions?

Mr. Sagel?

MR. SAGEL:  Yes.  With the caveat that not on the
previous terms of release because his previous terms of
release were under the supervision of the Federal Bureau of
Investigation and the Internal Revenue Service Criminal
Investigation Division.  I'd ask that his terms of release be
the standard conditions of release supervised by either
pretrial services or the United States Probation Office.

THE COURT:  All right.  That is definitely what the
court is contemplating.

Mr. Romney, is it agreed that the circumstances of
defendant's prior release and appearances justified continued
release on the terms as Mr. Sagel has just identified?

MR. ROMNEY:  Yes, Your Honor.

Yes, Your Honor.

THE COURT:  All right.  Can the parties stipulate that there is sufficient evidence from which the court would find by clear and convincing evidence that the defendant is not likely to flee or pose a danger to the safety of any other person or the community?

Mr. Sagel?

MR. SAGEL:  We would so stipulate, Your Honor.

THE COURT:  Mr. Romney.

MR. ROMNEY:  So stipulated.

THE COURT:  All right.  The court is going to make that finding.  I gave reasons at the beginning of this hearing.

I will repeat them -- I will confirm that I am standing by those reasons.

I also believe on the issue of fleeing that the pension payments are such that if the defendant were to flee the County would be relieved from those pension payments and the defendant would likely not recover them.

Yes.

MR. SAGEL:  I'm speaking out of -- without doing the research, I actually think Your Honor is wrong because I think his wife is still entitled to those pension payments.

So if that is the thought of -- I don't -- while I don't think this defendant is going to flee, I don't think it

would be a bad thing to say his release is based on a
justification, a signature bond of his pension.

       THE COURT:  On what?

       MR. SAGEL:  His justification -- his surety of
justification is his future payments of pension.

       THE COURT:  I think that would accomplish the
order -- the statement I just made and that would be my
order.

       THE CLERK:  Judge, that's not something that --
I have pretrial also here.  Pretrial and probation.

       MS. STORM:  Your Honor, Karen Storm, pretrial
services.

       I have never seen that happen before.  There's no
way that pretrial services could actually do that.  It's
usually an individual or a corporation.  We can't prove
that -- you can't use the surety because you can't use that
he eventually will get that, essentially if his -- his
judgment is appealed or reversed.

       MR. SAGEL:  I ask that he sign a deed of trust,
then, to his house, if the reason is he needs time to stay
out is to settle his affairs, if he flees, then he won't have
the house to sell.  He obviously would then be bound to not
flee because he's going to want to sell his house.

       THE COURT:  Mr. Romney.

       MR. ROMNEY:  I don't think there's any chance

whatsoever that Mr. Jaramillo's going to flee, Your Honor.
He has a disabled mother that he's been caring for for
14 years, 15 years.  He's not going to abandon her.  He's got
two elderly aunts that he has been caring for for over
14 years.  He's not going to abandon them.  He has a home
here.  He has a son that's in college.  He has a daughter
that's just starting middle school.  He's married -- I don't
believe he's going anywhere.  I'd be shocked if that even
entered into his mind, and I'd ask the court to simply allow
him to surrender on that date without any further order.

        THE COURT:  All right.  Mr. Jaramillo, you
understand that if you didn't surrender on that date the
consequences could be very serious?

        THE DEFENDANT:  Your Honor, you have my word I will
be wherever this court tells me to be at the date that you
tell me to be there.

        THE COURT:  All right.  I previously stated and the
parties seem to agree that there is not a chance of fleeing,
and I don't think the -- there is safety to the community
concerns in this case.  And the parties have agreed on that.

        So the defendant may continue on his release
status, except that he will now report to who, Mr. Sagel?

        MR. SAGEL:  Ms. Storm can correct me, but I believe
it's still pretrial services until he -- I believe it's
pretrial services.

MS. STORM:  Okay.

THE COURT:  All right.  Except for the adjustment that the reporting will be to pretrial services.

If the government wishes to make any motions to alter the bond requirements or such, you may do so.  You're not required to do so.  But since there was questions made about the legal issues concerning various alternatives, if you wish to follow up on that you may bring a motion and we'll look at it.

But for now we'll continue on the existing arrangements.

MR. SAGEL:  Thank you, Your Honor.

With one contingency of -- I don't mind him having forthwith release, but for him to have a date certain to report to pretrial services, which I don't believe he's ever done.

THE COURT:  Where may he report to pretrial services?

MR. SAGEL:  I'm being told tomorrow by people in the corner.

THE COURT:  Tomorrow?

MS. STORM:  Yes, Your Honor.  Tomorrow.

THE COURT:  And where may he report to you?

MS. STORM:  In this building on the fourth floor.

THE COURT:  Can you do that tomorrow,

Mr. Jaramillo?

        THE DEFENDANT:  Yes, sir.  I'll be there.

        Any particular time?

        MS. STORM:  10:00 a.m., Your Honor.

        THE COURT:  All right.  The reporting be will be at 10:00 a.m. tomorrow.

        THE CLERK:  The only conditions previously imposed were defendant shall submit to supervision.  Travel is restricted to the -- to California or other places with permission of the court.  Those were the only two conditions that we previously imposed.

        The regular conditions would be do not enter premises of any airport, reside as approved, maintain or seek employment.  There's certain conditions that normally would be --

        THE COURT:  All right.  I'm going to leave the conditions as stated.  That is my ruling.  If the government wishes to alter those conditions, they may present that to me.

        MR. SAGEL:  The only alteration that I believe is his travel should be limited to the Central District of California.  No other locations other than the Central District.

        THE COURT:  All right.  That will be the ruling subject to you filing something with me, Mr. Jaramillo, if

good cause can be shown.

All right.  We've set the conditions.

Anything further before we are in recess?

THE CLERK:  Is the surrender date October 30th at 12:00 noon?

THE COURT:  What day is that?

THE CLERK:  October 30 is a Friday.

THE COURT:  Okay.  October 30 at 12:00 noon.

THE CLERK:  Or to the designated -- either to this -- the marshals office in this building or to the designated facility.

THE COURT:  Correct.

Anything further?

MR. ROMNEY:  No, Your Honor.

Thank you.

MR. SAGEL:  Nothing from the government.

Thank you, Your Honor.

THE COURT:  All right.  Let me just say, Mr. Jaramillo, I've been tough on you today.  I think I needed to meet the requirements of 3553A, and I believe the sentence I have done meets that requirement.

I hope, while you're in custody, you'll listen. You can -- you consider what you've done and how you can lead your life better when you get out.

And I wish you good luck in doing that.

We are in recess.

(End of proceedings.)

**EXHIBIT 2**



# LAWRENCE BEACH

ATTORNEYS AT LAW

## ALLEN & CHOI · PC

www.lawrencebeach.com

1600 North Broadway, Suite 1010
Santa Ana, California 92706
T 714-479-0180
F 714-479-0181

Los Angeles County
100 West Broadway, Suite 1200
Glendale, California 91210
T 818-545-1925
F 818-545-1937

November 2, 2009

**Via Facsimile and U.S. Mail**

Joel W. Baruch, Esq.
LAW OFFICES OF JOEL W. BARUCH
2020 Main Street, Suite 900
Irvine, California 92614

  Re: **George Jaramillo v. County of Orange, et al.**
     **Case No.: 05CC04220**

Dear Mr. Baruch:

    I have read the transcript of the September 14, 2009 sentencing hearing in the matter of <u>United States of America v. George Jaramillo</u>, Case No. CR-00036-AG-1.

    As you know, we are to submit briefs to the Court by November 9, 2009. A primary issue concerns attorneys' fees. At Page 115, Judge Guilford states:

    "And to the extent we're talking about factual matters, I would like evidentiary
    matters to be submitted like the -- the fee agreement."

    Consequently, would you please, at your earliest convenience, provide me with complete signed copies of all fee agreements between Mr. Jaramillo and his counsel during the pendency of Mr. Jaramillo's suit against the County.

    Thank you for your anticipated cooperation.

      Very truly yours,

      LAWRENCE BEACH ALLEN & CHOI, PC.

      David D. Lawrence

DDL:blm

**EXHIBIT 3**

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER

SEP 1 0 2009

ALAN CARLSON, Clerk of the Court

BY  M. NAKATA

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF ORANGE, CENTRAL JUSTICE CENTER

| | |
|---|---|
| GEORGE JARAMILLO, <br><br> Plaintiff, <br><br> VS. <br><br> COUNTY OF ORANGE; <br> MICHAEL CARONA and DOES 1-<br> 20, inclusive <br><br> Defendants. | CASE NO.  05CC04220 <br> Honorable Andrew P. Banks <br> Department C11 <br><br> Complaint Filed: March 17, 2005 <br> Trial Date: Completed <br><br> AMENDED (PROPOSED) JUDGMENT |

1    This matter came for a trial before the Honorable Andrew Banks on April 6, 2009
2  through May 13, 2009. The parties waived their rights to a jury trial and requested that the Court
3  decide the matter. The Court, having received testimony and exhibits, and having heard
4  argument by counsel, now finds on the issues raised and presented as follows:

5

6    ### Claims Relating to the Peace Officers Bill of Rights:

7    Government Code (hereinafter G.C.) Sections 3300 - 3311 set forth the Public Safety
8  Officers Procedural Bill of Rights (hereinafter the Bill of Rights Act or the Act). The Act makes
9  it unlawful (the Legislature's term) for any public safety department to deny or refuse to any
10 public safety officer the rights and protections guaranteed them by the Act (G.C. section 3309.5).

11   The evidence established that the plaintiff George Jaramillo was at all times relevant
12 herein a public safety officer and that the Orange County Sheriffs Department was a public
13 safety department subject to the Act.

14   The evidence further established that the Defendant (Defendant is liable as a result of the
15 actions of former Sheriff Michael Corona) denied and/or refused the Plaintiff the following
16 rights and/or protections under the Act: refusing to provide Plaintiff with an opportunity for
17 administrative appeal when punitive action is undertaken (G.C. section 3304 (b)); failing to give
18 notice to plaintiff of Defendant's decision to impose discipline (i.e. termination) on Plaintiff
19 (G.C. section 3304 (f)).

20   The Defendant's position was that Plaintiff had waived his rights under the Act to notice
21 and appeal. It relies on Exhibits 1 and 2. However, that reliance is misplaced.

22   The California Supreme Court in County of Riverside v Superior Court, (2002) 27 Cal
23 4th 793 clearly stated that the Act is not subject to blanket waiver (Id. at 804). The waiver
24 involved here is a blanket or general waiver [of both notice and a right to appeal the "punitive
25 action" (G.C. Section 3304(a)]  and is far beyond the very narrow and extremely limited waiver
26 upheld by a bare majority of the Court in County of Riverside. The Supreme Court's language
27 is particularly instructive:

28   " .. .If law enforcement agencies could routinely require applicants to

1  waive their prospective rights under the Bill of Rights Act as a condition
2  of employment, these employers could render the Bill of Rights Act
3  nugatory vis-a-vis all new peace officers, essentially forcing these officers
4  to opt out of the Act before they even begin work. That result would be
5  inconsistent with Civil Code section 3513." (Id at 905).

6  Indeed, the Court in County of Riverside, acknowledged that the waiver they upheld
7  arose in "the unusual factual context of a transition from city to County law enforcement in the
8  City of Perris" (Id at 807). The Supreme Court held: "Where the employee's waiver is limited
9  to an investigation of matters that arose prior to employment, and where the waiver expires after
10 one year, so the employee is not subject to continuing investigation long after being hired,
11 enforcement of the waiver would not particularly undermine the public purpose of the Act. .."
12 (Id at 806).

13 The waivers involved in this case are in no way similar to that upheld in County of
14 Riverside.

15 More recently the Court of Appeal had occasion to address the Act and its protections.
16 In the case of Riverside Sheriff's Association vs County of Riverside, (2009)173 Cal. App. 4th
17 1410, 1425; 93 Cal. Rptr. 3d 832, that Court stated as follows:

18  "POBRA provides "a number of basic rights and protections which
19  must be accorded individual public safety officers by the public
20  agencies which employ them. [Fn. Omitted.] One of the basic
21  protections is the right to an administrative appeal of punitive actions."
22  (White v County of Sacramento, (1982) 31 Cal 3d 676,679).

23

24  "Section 3304, subdivision (b) provides: "No punitive action... shall
25  be undertaken by any public agency against any public safety
26  officer. ..without providing the public safety officer with an
27  opportunity for administrative appeal"... (Id at 709)".

28

1   The Defendant County of Orange continually took the position that Plaintiff Jaramillo had
2   waived his rights under the Act to notice and administrative appeal and that they had no
3   obligation to provide him such. They are wrong on both counts.

4   While there was conflicting testimony on whether Plaintiff asked for an appeal hearing
5   on the day he was terminated (which he was not required to do) this Court finds that the issue
6   of his administrative appeal rights was raised long before this lawsuit was filed.

7   For example, Exhibit 47 is the settlement agreement dated 6 months after Plaintiffs
8   termination (received for limited purposes and not to show liability on Defendant's part), signed
9   by Plaintiff himself, his attorney and the Defendant's attorney. It includes a provision whereby
10  Plaintiff waives any claims he has against Defendant arising out of Defendant's alleged violation
11  of the Act (Exh. 47, Section B1 - at pages 1 and 2 of the Agreement). Even after the "settlement"
12  was not approved by the Board of Supervisors and through the filing of this lawsuit the evidence
13  is that the Defendant failed to provide Plaintiff his right to an administrative appeal claiming
14  Plaintiff waived such right. The evidence also established that after Plaintiffs termination the
15  County's Human Relations Director, Jan Walden, discussed the rights protected under the Act
16  with former Sheriff Corona and still no appeal hearing occurred. The Defendant is liable for this
17  violation of the Act.

18  An additional and separate violation of the Act is found in the failure of Defendant to
19  "notify the public safety officer in writing of its decision to impose discipline, including the date
20  that the discipline will be imposed, within 30 days of its decision..." (G.c. section 3304 (f). No
21  such notice was given Plaintiff.

22  There was discussion about whether "termination of employment" is "discipline" as the
23  latter term is used in the Act. The Court has found no case directly on point. However, according
24  to (www.webster-onlinedictionary.org/definition/discipline). the term "discipline" is defined "is
25  defined as "the act of punishing". Utilizing that definition results in finding Defendant also
26  violated this section of the Act.

27  This case was tried as to several other claimed violations of the Act. This Court finds that
28  Plaintiff did not meet his burden of proof as to those other claimed violations.

1    This Court further finds that with respect to the established violations of the Act, former
2   Sheriff Michael Corona was acting within the scope of his employment and he maliciously
3   violated provisions of the Act with the intent to injure Plaintiff.

4

5   <u>The 6th Cause of Action for Violation of 42 USC § 1983 - Fourteenth Amendment</u>:

6    The evidence established that before Plaintiff became an Assistant Sheriff of Orange
7   County he was a "for cause" employee of the County of Orange working in the Marshal's
8   Department.  When he became an Assistant Sheriff he signed Exhibit 1 and thereafter while
9   Assistant Sheriff signed Exhibit 2. Exhibits 1 and 2 included a provision that the signer would
10  be an at-will employee of the Defendant. In signing Exhibit 1 Plaintiff gave up his "for cause"
11  status obtained from his position in the Marshal's Office but not his rights and protections under
12  the Act.

13    Thus, at the time of his termination he had signed Exhibits 1 and 2 (Exh. 2 arguably
14  superseded Exh. 1). He was a public safety officer who, although he could be fired for "a good
15  reason, a bad reason or no reason" (a typical definition of an at-will employee), he could not be
16  fired for a reason that violated the law (e.g. in violation of his rights and protections under the
17  Act, or in violation of certain Labor Code provisions or in violation of anti-discrimination laws
18  such as FEHA).

19    Plaintiff Jaramillo had a property interest in his position. As stated by the Court of Appeal
20  in <u>Brown v City of Los Angeles</u> (2002) 102 Cal App 4th 155, 169:

21         "The Fourteenth Amendment to the United States Constitution 'places
22          procedural constraints on the actions of government that work a
23          deprivation of interests enjoying the stature of 'property' within the
24          meaning of the Due Process Clause.' [Citation] Property interests that are
25          subject to due process protections are not created by the federal
26          Constitution. Rather, they are created, and their dimensions are defined
27          by existing rules or understandings that stem from an independent source
28          such as state law'. " (Citation omitted)

1      "As the United States Supreme Court put it, 'property

2      interests subject to procedural due process protection are not limited by a

3      few rigid, technical forms. Rather, property denotes a broad range of

4      interests that are secured by existing rules or understandings.

5      [Citations.] A person's interest in a benefit is a property interest for

6      due process purposes if there are such rules or mutually explicit

7      understandings that support his claim of entitlement to the benefit.'

8      (Perry v Sindermann [(1972)] 708 U.S. [593] 601.'"

9  As the Brown Court noted, citing the United States Supreme Court in Gilbert v Hamar (1997)

10 520 US 924, 932: " ...an employee has a significant private interest in the uninterrupted receipt

11 of his paycheck. .. ". Brown, supra, 102 Cal App 4th at 175.

12      This Court finds that the benefits, protections and rights contained in the Act support

13 Plaintiffs claim of a property interest in his job as Assistant Sheriff. The Defendant's failure to

14 provide him the required notice and administrative appeal violated Plaintiff's Fourteenth

15 Amendment rights and Defendant is liable to Plaintiff for this violation.

16

17      **The 7th Cause of Action for Violation of Labor Code Section 1102.5**

18      This Court finds that Plaintiff has met his burden to establish by a preponderance of the

19 evidence that an activity proscribed by Labor Code section 11 02.5 was a contributing factor in

20 the termination of Plaintiff. Once Plaintiff met this initial burden the Defendant had the burden

21 of proof to establish by clear and convincing evidence that the termination would have occurred

22 for legitimate, independent reasons even if Plaintiff had not engaged in activities protected by

23 Labor Code section 11 02.5. (Labor Code section 1103). Defendants failed to carry their burden.

24      The Court finds credible the claim that Plaintiff notified former Sheriff Corona that

25 Corona's use of County property, including automobiles and helicopters, for sexual liaisons was

26 improper. This was a contributing factor in Plaintiff's termination.

27      As a result of this determination the Defendant is also liable for violation of Labor Code

28 section 1102. 5.

**Defendant's Affirmative Defenses:**

The Defendant asserted two affirmative defenses to Plaintiffs claims. The affirmative defenses were: (1) unclean hands, and (2) after acquired evidence.

These defenses are unavailing to the Defendant for the reasons set forth in Murillo v Rite Stuff Foods, Inc. (1998) 65 Cal App 4th 833 and which were discussed at length on the record in this matter. Said discussions and decisions of the Court are incorporated herein and are relied upon by the Court in reaching its decision. Quite simply, this Court finds that the protections and rights afforded to public safety officers under the Act are entitled to the same level of consideration and protection given all persons under California's Labor laws and antidiscrimination statues such as FEHA (see e.g. Government Code § 12920 et seq.). The affirmative defenses should not bar Plaintiffs claims herein for the same reasons they do not bar claims under the aforementioned laws.

THEREFORE, IT IS NOW ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

1) Plaintiff will be awarded injunctive relief, extraordinary relief, monetary damages, civil penalties, and reasonable attorney's fees and costs, as provided below.

2) Plaintiff is entitled to, and will receive, injunctive relief under the Public Safety Officers Procedural Bill of Rights Act, as set forth in Government Code Sections 3300 - 3311. Plaintiff's counsel is directed to prepare an Injunction directed to the County of Orange as follows:

A) Defendant County of Orange is hereby prohibited from using language in any personnel document or "at will" waiver, which purport to obtain from Executive Management Personnel in the Orange County Sheriffs Department who are public safety officers, any waiver of rights that would include a waiver of rights, privileges and/or protections under the Public Safety Officers Procedural Bill of Rights Act (as codified at Government Code Sections 3300-3311).

B) To the extent any such documents/waivers exist with respect to any current Assistant Sheriffs, Undersheriffs or other Executive Management employees of the Orange

County Sheriffs Department, who are public safety officers under the Public Safety Officers Procedural Bill of Rights Act (as codified at Government Code Sections 3300-3311), those waivers are declared unlawful and void as to any waiver of rights, privileges or protections contained in the Act.

        C)    The Defendant is further prohibited from tendering to any public safety officer, including but not limited to, Assistant Sheriffs and Undersheriffs any waiver of rights or proposed at will agreements that do not include the following language:

> "This document does not constitute nor shall it be considered
> a waiver of any of the rights protections and/or privileges of
> Government Code sections 3300 et seq. commonly known
> as the Public Safety Officers Procedural Bill of Rights Act."

        3)    This Court further orders that Plaintiff recover back pay, and to the extent necessary to effectuate this award, Defendant County of Orange reinstate Plaintiff (for salary and benefits purposes only) for the period from the date of his termination, which is March 17, 2004, through and including January 28, 2007, and that he be and is awarded back pay and benefits for that period and that he receive all benefits and employer contributions to health, pension and any other plans which contributions were being made by the Defendant as of the date of Plaintiff's termination. The back pay amount to be utilized for computation purposes is his salary as of the date of termination. That salary amount shall remain constant and fixed for the entire period described above. The Court finds Plaintiff did not meet his burden of proof that he more likely than not would have received pay increases from former Sheriff Corona.

        4)    After computing the amount of back pay due Plaintiff and before payment of any net amounts due him the Defendant is entitled to deduct from net back pay the sum of $234,294.00 which is the amount the Court finds that Plaintiff earned between his termination and January 28, 2007.

        5)    Government Code section 3309.5 (e) makes Defendant liable for a civil penalty not to exceed $25,000.00 for each violation of the Act where the Court finds a malicious violation with intent to injure a public safety officer. The Court has made this finding with

respect to former Sheriff Corona thus exposing Defendant to this additional penalty up to a maximum of $50,000.00 for the two Act violations found to exist. The Court has discretion in this area and chooses to award Plaintiff the sum of $50 for each violation for a total of $100.00. The basis for this decision includes the following: former Sheriff Corona is gone - driven from office. Defendant County of Orange has indicated its willingness to change its waiver forms and its counsel has advised this Court that he has recommended discontinuance of the use of the offending language in the waiver. In light of these facts this Court sees no reason to impose other than a de minimus penalty.

6)    Section 3309.5 (e) also allows for the recovery of actual damages suffered. The Court has ordered salary and benefit reinstatement for plaintiff and awarded reasonable attorney's fees to be determined by motion later and therefore the only remaining actual damage claim is for claimed non-economic damages, e.g. anxiety, emotional distress etc. The Court finds that the evidence does not support an award for non-economic damages.

BASED ON THE ABOVE ORDERS, FINDINGS, AND DIRECTIONS, IT IS FURTHER ORDERED, ADJUDGED, AND DECREED AS FOLLOWS:

1)    Plaintiff is entitled to Judgment for, as against Defendant County of Orange in the sum of $362,707.50. Of this amount, Plaintiff is entitled to judgment for, and Defendant County of Orange must pay to Plaintiff, the sum of $183,688.66, which represents back pay and benefits, after deduction of offsets, pursuant to the terms of the Judgment. Further, of this amount, Plaintiff is entitled to Judgment for, and Defendant County of Orange must pay into the Orange County Employee Retirement System (OCERS) in the name of George Jaramillo the sum of $179,018.84 which represents the amount of retirement benefits which would have accrued in Plaintiff's favor for the applicable time period.

2)    Plaintiff is entitled to Judgment for, and Defendant County of Orange must pay to Plaintiff, the sum of $100.00, which amount represents the Court's award of penalties for two violations of the Public Safety Officers Procedural Bill of Rights Act (as codified at Government Code Sections 3300-3311).

1    3)    Plaintiff is entitled to Judgment for, and Defendant County of Orange must pay

2 to Plaintiff, settled costs of the action in the sum of _____.

3    4)    Plaintiff is entitled to Judgment for, and Defendant County of Orange must pay

4 to Plaintiff's counsel, Joel W. Baruch, reasonable attorney's fees in the sum of _____.

5    5)    Plaintiff is entitled to Judgment for, and Defendant County of Orange must pay

6 to Plaintiff's counsel, Michel Mills, reasonable attorney's fees in the sum of _____

7    6)    Plaintiff is not entitled to receive any monetary award for non-economic damages.

8    7)    Plaintiff is entitled to, and will receive, the injunctive relief provided for by the

9 Court in this Judgment.

10

11    IT IS SO ORDERED.

12

13

14 Dated: _____September 10_____, 2009       _____

15                                          The Honorable Andrew Banks, Judge of the
                                            Orange County Superior Court
16

17

18

19

20 APPROVED AS TO FORM & CONTENT ONLY

21

22

23 David Lawrence, Attorney for Defendant County of Orange

24

25

26

27

28

1                          PROOF OF SERVICE

2    STATE OF CALIFORNIA      )
                             ) ss:
3    COUNTY OF ORANGE      )

4       I am employed in the County of Orange, State of California, at the law firm of
5 **LAW OFFICES OF JOEL W. BARUCH, P.C.** (2020 Main Street, Suite 900, Irvine, California 92614). I am over the age of 18 and not a party to the within action.

6       On August 20, 2009, I served **AMENDED (PROPOSED) JUDGMENT** in the manner indicated below, the foregoing document on the interested parties to this action as
7 follows:

8 David D. Lawrence, Esq.
Christina M. Sprenger, Esq.
9 LAWRENCE BEACH ALLEN & CHOI, PC
1600 North Broadway, Suite 1010
10 Santa Ana, California 92706
Phone:(714) 479-0180
11 Fax:  (714) 479-0181         *Attorneys for COUNTY OF ORANGE*

12 Michel Mills
c/o KRYSTAL
13 2701 East Imperial Highway
Brea, California 92821         *Co-counsel for Plaintiff JARAMILLO*
14 Phone: (949) 310-4694
Fax:  (714) 986-1258

15

16 XX    (BY REGULAR MAIL) I caused such envelope(s) to be deposited in the United States mail at Irvine, California, with postage thereon fully prepaid. I am readily
17 familiar with the firm's practice of collection and processing correspondence for mailing. It is deposited with the United States Postal Service each day, and that
18 practice was followed in the ordinary course of business for the service herein attested to.   [C.C.P. Section 1013(a)(3)]

19      (BY OVERNIGHT EXPRESS I caused such envelope(s) to be delivered by hand to the offices of the parties listed in the Service List.
20

21      (VIA FACSIMILE SERVICE) I caused the above document to be served via facsimile transmission by serving the parties listed in the Service List at the facsimile numbers listed with their names.
22

23 I declare under penalty of perjury under the laws of the State of California that all the foregoing is true and correct.

24 Executed on August 20, 2009, at Irvine, California.

25

26                             _Nichol Fitzpatrick_
27                             NICHOL FITZPATRICK
                             Declarant

28

**PROOF OF SERVICE**

STATE OF CALIFORNIA; COUNTY OF ORANGE

  I, Donna Adams, am employed in the aforesaid County, State of California; I am over the age of 18 years and not a party to the within action; my business address is 1600 North Broadway, Ste. 1010, Santa Ana, CA 90706.

  On November 10, 2009, I served the foregoing **COUNTY OF ORANGE'S AMICUS BRIEF IN RE COURT'S RESTITUTION ORDER AND FEES REQUESTED BY HIS COUNSEL; MEMOREANDUM OF POINTS AND AUTHORITIES; DECLARATION OF DAVID D. LAWRENCE AND EXHIBITS** on the interested parties in this action by placing a true copy thereof, enclosed in a sealed envelope, addressed as follows:

Joel W. Baruch
LAW OFFICES OF JOEL W.
BARUCH
2020 Main Street, Suite 900
Irvine, CA  92614
Telephone: (949) 864-9662
Facsimile: (949) 662-8985

Michael Mills
c/o KRYSTAL
2701 East Imperial Highway
Brea, California 92821
Telephone: (949) 310-4694
Facsimile: (714) 986-1258

X  BY MAIL:  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice, it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Santa Ana, California, in the ordinary course of business.

_  BY FEDERAL EXPRESS
I caused such envelope to be delivered via Federal Express to the offices of the address(es) listed above.

___  BY PERSONAL SERVICE

  _  I hand delivered such envelope by hand to the addressee(s) listed above.

X  (Federal) I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 10, 2009, at Santa Ana, California

Declarant

10